HOTCHKISS v. COX ET AL.

1. **Contract:** SALE OF REALTY: WHEN VALID IN PAROL. A parol agreement to relinquish an interest in real estate not occupied as a homestead, made by a husband and wife for a valuable consideration received, is valid and will be enforced.

*Appeal from Mahaska District Court.*

THURSDAY, MARCH 21.

THE plaintiff claims to be the owner of an undivided fourth of lots 7 and 8 in block 21 in the city of Oskaloosa. The title to the lots is in the defendant, Seth Cox. The plaintiff was formerly married to Amos Cox, now deceased, who was the son of Seth Cox. Amos Cox became the owner of an undivided half of the lots by exchange with his father, giving him other real estate therefor. He died intestate, without issue. The plaintiff asks that the defendant, Seth Cox, be decreed to deed an undivided fourth of the lots to her.

He claims that prior to the time of his son's death his son was indebted to him and others, and that his son and the plaintiff relinquished their interest in the property in consideration of the payment of the debts. Other facts are stated in the opinion. Decree for defendants. Plaintiff appeals.

*F. M. Davenport,* for appellant.

*Lafferty & Johnson* and *Hole & Hillis,* for appellees.

ADAMS, J. No motion or order was made for the trial of the action upon written evidence. The action is not, therefore, triable *de novo.* It is true that the abstract shows that it was in fact tried upon written evidence, but we have held repeatedly that that is

1. CONTRACT: sale of realty: when valid in parol.

not sufficient to render the case triable *de novo* in this court. There is no assignment of errors, and, if there were, the finding of the court would have the force of a verdict of a jury. Upon looking into the evidence, however, it appears to us that the finding is fully sustained. The evidence shows that Amos Cox, at the time he acquired an interest in the property in question, was considerably indebted to his father; and it was a part of the trade that he was to give his father a mortgage upon the interest acquired to secure such indebtedness. After the conveyance by Amos and the plaintiff of the property to be conveyed by them, Amos and his father had an accounting of the amount due from Amos preparatory to the execution of the mortgage which was to be given to secure the same. The amount was ascertained, but the giving of the mortgage was postponed. Finally it appears that both Amos and the plaintiff agreed to relinquish their interest in consideration of the indebtedness, and in consideration of the expenses which Amos' father was incurring for him in the sickness which terminated in his death. There is some conflict of evidence upon this point, but it satisfies us that the agreement was made as above set forth. Seth Cox testifies that the reason which Amos gave for never executing the mortgage was that "it was not worth while on account of the continual expense he (Seth) was at, for him." He further testifies that Amos and the plaintiff told him that they had been thinking the matter over, and that the amount they were owing him was so much that they had both given up all claim to the lots. One Rebecca Cox testifies that she heard the plaintiff say that they had given up all, and that then they could not pay Seth for what he had done. One John Cox testifies that he heard the plaintiff say that she had given up her interest in the lots.

There is, to be sure, no evidence that the plaintiff relinquished her claim in writing, and there was evidence tending to show that plaintiff and her husband occupied the premises as their homestead for about six months after they acquired the interest in the same. Her counsel cite *Stinson v. Richardson*, 44 Iowa, 373, in which it was held that the assignment of a title

bond to a homestead conveyed nothing where the wife did not join in the assignment.

It appears, however, that the agreement made by plaintiff and her husband to relinquish their interest in the premises was made after they ceased to occupy them. It was made in July, 1868. The premises were acquired in October, 1867. The evidence, although not explicit, leads us to infer that the plaintiff and her husband moved in soon afterwards. They occupied the premises only about six months.

It is insisted by plaintiff, however, that a parol agreement would not in any event be sufficient to divest their interest in the property. But if the plaintiff and her husband agreed to relinquish their interest in the property in consideration of the discharge of the plaintiff's husband's indebtedness to his father, and in consideration of his expense to his father in his last sickness (and the evidence shows that the father took his son in his last sickness into his house and kept him until he died), it appears to us that the agreement, although resting in parol, was valid.

Considerable evidence was introduced to show that Seth told the plaintiff that if she could find any one who would give more for the property than was necessary to pay her husband's debts she could have all above such sum. But the offer, we think, was made as a gratuity. As such it was entirely natural under the circumstances. It was made to a widowed daughter-in-law, whose agreements were not to be rigidly insisted upon if she could still save something for herself. We see no reason for treating it as an admission that she had a claim which she could enforce. If she had such claim the offer would have been superfluous. We think that the judgment of the District Court must be

AFFIRMED.