JOHN D. KERR and SADIE KERR, Appellants, v. CHRIS YAGER, ANNIE YAGER, ELLA SAPP NORMAN, GEO. NORMAN, NETTIE SAPP MILLSPAUGH, ANNA SAPP CLEVELAND, JAMES CLEVELAND, DAISY SAPP ALDRICH, C. LESTER ALDRICH and MARY SAPP, Appellees.

**Partition:** ADVERSE POSSESSION: BURDEN OF PROOF: EVIDENCE. The defendant in partition proceedings, who claims the land by virtue of an oral transfer followed by possession for the statutory period, has the burden of proof on that issue. In the instant case the evidence is held to show that a parol conveyance was made to defendants' grantor, in consideration for past services and an agreement to pay the taxes on the land.

**Evidence:** CONFIDENTIAL COMMUNICATIONS. The grantor of a party to an action involving real estate is incompetent under the statute to testify to personal transactions or communications with his deceased father, from whom he claimed an oral conveyance of the land; but the wife and son of the grantor are competent witnesses to communications between the husband and father, and his deceased grantor, for the purpose of establishing a parol conveyance, and in an action to which they were not parties.

**Same:** WAIVER OF OBJECTIONS. An objection to evidence on specified grounds waives all other grounds of objection.

**Conveyances:** STATUTE OF FRAUDS: CONSIDERATION. The satisfaction of a pre-existing debt is a sufficient consideration for the conveyance of land, and amounts to such payment as to take the transaction out of the statute of frauds.

**Appeal:** ABSTRACT: TIME. Where appellees' amended abstract was filed as soon as the points for reversal relied upon by appellant were known, though not in time, it will not be stricken.

*Appeal from Harrison District Court.*—HON. A. B. THORNELL, Judge.

FRIDAY, DECEMBER 13, 1912.·

ACTION for the partition of certain real estate. Defendants Yager and Yager claimed to be the owners of the land through *mesne* conveyances from James H. House, now deceased, from whom all parties trace their title. Various other issues were tendered, and upon trial ·to the court a decree was rendered dismissing plaintiff's petition, and quieting the title to the land in defendants Yager and Yager. Plaintiff's appeal.—*Affirmed.*

*J. S. Dewell*, for appellants.

*C. W. Kellogg*, for appellees Yager and Yager.

*Clem F. Kimball*, for other appellees.

DEEMER, J.—James H. House died some time in the year 1888, seised of the record title to the land in controversy. He had five children, to wit: William, Chas., and Allen, sons, and Jannet, who afterwards married William Eddie, and Eliza, who afterwards married Abraham Sapp, daughters. Prior to the death of James, Jannet Eddie died, leaving three children, Chas., Winnie, who married plaintiff John D. Kerr, and Lillie, who afterwards married John Brownrigg. Winnie Kerr died prior to the demise of James House, leaving one daughter, Sadie Kerr, a minor, who is also one of the plaintiffs, and the two plaintiffs claim to own an undivided one-fifteenth of the real estate. Eliza Sapp died before the death of her father, leaving six children surviving, and these, with their respective husbands and wives, are defendants, and they each claim a one-thirtieth interest in the real estate. William, Charles, and James House, sons, quitclaimed their interest in their father's property to the other son, Allen, and thereby Allen became vested of an undivided three-fifths of said real estate. And on July 27, 1904, Allen House, his wife joining,

conveyed their interest to defendants Yager and Yager. In October of the year 1906 Chas. Eddie and wife and Lillie Brownrigg and husband conveyed their interest in the land to plaintiff Kerr, and it is claimed that he thereby became the owner of two-fifteenths of said estate. In November of the same year George Sapp conveyed his interest to one W. A. Smith, who, in turn, conveyed the same to plaintiff Kerr, by reason of which Kerr became the owner of an undivided one-sixth of the estate. Defendant Annie Yager is the daughter of Allen House, and Chris Yager is her husband. Defendants Yager and Yager claim title to all the property in controversy in virtue of a warranty deed for the same to them executed by Allen House and wife on July 27, 1904. They also pleaded that James H. House during his lifetime and some time prior to the year 1876 sold and transferred the property to his son Allen by oral contract, and that, pursuant to such sale, Allen took possession of the land, made improvements thereon, and ever thereafter paid the taxes on the premises. They also procured an assignment from Allen House in the following terms:

Having sold to my daughter, Anna Yager, and her husband, Chris Yager, lot 6 and all of lot 5, except the west eleven acres thereof in section No. 18, township No. 78, range 45, Harrison county, Iowa, and given the said Anna Yager and Chris Yager a warranty deed to the said land, I hereby sell and assign to said Anna Yager and Chris Yager, my claim against the several plaintiffs and defendants in the suit of John D. Kerr et al. vs. Anna Yager et al., commenced in the district court of Harrison county, Iowa, for the January term, 1907, the said taxes having been paid on said land by me under claim of ownership, believing that I was the owner of the land under oral sale and gift from my father, James H. House. And I hereby authorize my said daughter and her husband, Anna Yager and Chris Yager, to collect said taxes and the interest thereon from the several claimants of said property in said suit, if it shall be found by the court that the plaintiffs and defendants are entitled to any part of said land, and authorize them to claim the

same as an offset against any claim of the plaintiffs or defendants in said suit.

Dated Missouri Valley, Iowa, this 29th day of December, 1906.

his<br>
Allen X House.<br>
mark

And, after averring that Allen paid taxes on the land to the amount of $275.81, they asked to be protected in any event to the amount of these taxes which should be charged proportionally against any adverse interest in the land. They also pleaded that they went into the possession of the land some time in the year 1890 or 1891 under an arrangement with Allen House, believing that they were the owners thereof, and that they have ever since been in the continuous, open and adverse possession of the property. They further pleaded the adverse possession of their grantor, Allen House, for the full statutory period, both before and after the death of his father. Repleading the same facts, they asked that their title to all the premises be established and quieted in them. As to defendant Eliza Sapp, they pleaded that deceased, James H. House, made a conveyance to her which was to be in full of her share in his estate, and that she accepted the same as such, and that plaintiff Kerr took nothing under his deed from George Sapp. They also pleaded that, since they took possession under their deed from Allen House, they cleared off the property at an expense of $50, and made improvements thereon of the value of $2,250, and they asked that these matters be also taken into account in the event their title was not confirmed. In a reply to the pleadings setting up these various matters plaintiffs denied most of the affirmative statements, and pleaded the statute of frauds. They also pleaded that the rents and profits of the land should be offset against the claims for taxes. They also asked that, if it be found that the Sapp heirs had nothing in the land because of the conveyance to their mother, that their interest in the lands be proportionately increased. Plain-

tiff Sadie Kerr also pleaded that she was a minor fifteen years
of age, and that the statute of limitations could not and
would not run against her until after she became of age.
The other defendants filed pleadings which are not now
material because they seem to be content with the decree as
rendered. That decree was to the effect that Yager and Yager
were and are the owners of the property in fee simple. It
also established and confirmed their title and dismissed
plaintiff's petition. The facts so far recited being undis-
puted, and the appeal having been taken by plaintiffs alone,
it is manifest that the only issues to be considered are those
arising between plaintiffs and defendants Yager and Yager.
The record title was in James H. House at the time of his
death, and the burden was and is on the defendants Yager
and Yager to show that the said James sold the land to his
son Allen House in his lifetime as claimed, and that there-
after Allen conveyed the same to them, or that they took
possession of the land under the warranty deed from Allen
and his wife to them of date July 27, 1904, and that they have
since held possession thereof, claiming to own the same, and
that their grantor, Allen, held adversely since the year 1896.
If the latter be the finding, it would not in itself be sufficient
to bar the title of Sadie Kerr, for she is a minor, and the
statute of limitations would not run against her. We may for
the purposes of this opinion dismiss all other claims save
those made by appellees Yager and Yager in the briefs filed
by them: (1) That they hold title to all the land by
adverse possession; (2) that there is sufficient evidence to
show an oral sale of the land by James H. House during his
lifetime to his son Allen in consideration of services per-
formed followed by the sole possession and occupancy thereof
under said contract for more than ten years, and the making
of improvements thereon; and (3) that, in any event, they
are entitled to an allowance for all taxes paid, for improve-
ments placed upon the land, and for the value of labor per-
formed in putting into condition for cultivation.

It should be stated in this connection, in order to avoid confusion, that Allen House may have acquired title to the land by adverse possession before the death of his father, and, if that be true, plaintiff Sadie Kerr (minor) would have no interest therein.

I. The primary and pivotal question in the case is this: Did James H. House during his lifetime sell the land by oral agreement to his son Allen? And incidental thereto did the son Allen go into possession thereof and thereafter sell the land by warranty deed to defendants Yager and Yager, and did they or either of them go into possession, claiming to own the entire title, and use and occupy the land for any full ten-year period? Upon these questions the burden is upon the defendants Yager and Yager. Originally the land was covered with a heavy growth of timber, and was unoccupied, and the evidence tends to show that some time during the years 1873 and 1874 Allen House, by agreement with his father, undertook to, and did, clear the land of all saw lumber, and caused the same to be sawed, and the lumber was sold and the money turned over to the deceased James H. House, and defendants produced evidence to show that after this was done, and some time in the year 1876, the father said to his son Allen, "I will give you this land if you will take it and pay the taxes on it for what you have done for me in clearing it off." Testimony was also offered to show that the son Allen accepted the proposition, took possession of the land, and paid the taxes thereon. The testimony as to the possession taken by Allen is not very strong. It seems that thereafter he took timber therefrom for fuel and for posts. The land was unimproved and unfenced, save that some small garden spots were inclosed, and for a portion of the time part of it was in the possession of squatters. Cattle and stock ran over the land almost at will, and until the time the Yagers took possession squatters lived upon portions of it, and they never paid any rent, although they built some shanties thereon, and cultivated some small garden spots.

*1. PARTITION: adverse possession: burden of proof: evidence.*

Yager moved upon the land under an arrangement with Allen House about the year 1890, and immediately began its improvement. He fenced it, cleared it off, and made valuable improvements thereon.

Most of the testimony offered to show the sale of the land was objected to as incompetent and as coming from incompetent witnesses, and we may here say that we regard the witness Allen House incompetent to testify to any personal transactions or communications between himself and his deceased father because of the provisions of section 4604 of the Code. As to other relevant issues he was competent.

2. EVIDENCE: confidential communications.

But the witness Mary House, wife of Allen House, was competent to testify to transactions and communications between Allen and his father in which she took no part. Neither Allen nor his wife was a party to the suit, and the wife was not an incompetent witness to the matters of which she gave testimony.

William House, who was not made a party to the suit, was also a competent witness as to conversations he heard from his father. This competent testimony is sufficient as we think to show a parol conveyance of the land by James H. House to his son Allen in consideration of his services in clearing it up, and the further agreement to pay the taxes upon it. This is corroborated to some extent at least, in that he paid the taxes thereafter both before and after his father's death, and down to the time the land was deeded to the Yagers; by the fact that he assumed to control it both before and after the father's death, and to exercise exclusive acts of ownership over it, that he listed it for taxation as his own after the death of his father, and that plaintiff John D. Kerr, who now claims to own a part of it, knew as early as 1892 that he, Allen, was claiming to own it all; and by the further fact that he assumed to own it all and conveyed the entire title by warranty deed to the Yagers. Although plaintiff Kerr knew of this claim as early as the year 1892, he made no objections thereto.

Such being the testimony, we do not think it is open to the objection that it is within the statute of frauds. See *Hotchkiss v. Cox,* 47 Iowa, 655. Aside from this, it was not objected to on that ground, and for that reason the objection was waived. *Holt v. Brown,* 63 Iowa, 319; *Crossen v. White,* 19 Iowa, 109; *Graves v. Clark,* 101 Iowa, 738.

3. SAME: waiver of objections.

The satisfaction and release of a preexisting debt is a sufficient consideration for a conveyance and amounts to such payment as to take the case out of the statute of frauds. See the *Hotchkiss* case, *supra.* If Yager's case depended upon a parol gift, which must, to be sufficient, be followed by actual possession, if not by the making of improvements thereon, we should have more difficulty with it. But, as the conveyance was made in consideration of the son's past services, we think the agreement was something more than a gift. It was a transfer upon a consideration paid, and such acts of possession and ownership as followed are confirmation of the claims made by the Yagers. It would not be difficult to establish the claim of adverse possession against plaintiff John D. Kerr. But this would not dispose of the claim of Sadie Kerr, for as we think the statute did not run against James H. House during his lifetime.

4. CONVEYANCES: statute of frauds: consideration.

Our conclusion is also supported by competent and uncontradicted testimony that James H. House said to James and Charles House in the presence of Mary, Allen's wife, about the time of the alleged transfer, that he had given the land to Allen.

Appellant's motion to strike appellees' amendment to abstract is overruled. It was not filed in time, it is true, but it was filed as soon as appellees knew what points appellants were relying upon for a reversal.

5. APPEAL: abstract: time.

We are satisfied after a careful reading of the entire record that the decree of the trial court is right, and it is therefore *Affirmed.*